UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT G. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL INFORMATION SERVICES, INC.,<br><br>Defendant. | No. 1:17-cv-00542-DAD-SAB<br><br><u>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</u><br><br>(Doc. No. 28) |

This matter is before the court on plaintiff Robert G. Smith's motion for attorneys' fees. (Doc. No. 28.) On January 8, 2019, that motion came before the court for hearing. Attorney Devin Fok appeared on behalf of plaintiff, and attorney Erin Novak appeared on behalf of defendant General Information Services, Inc. All parties appeared telephonically. Having considered the parties' briefing, and having heard from counsel, the court will grant plaintiff's motion in part.

**BACKGROUND**

This case arises from an employment background check prepared by defendant. In the operative complaint plaintiff alleged as follows. Plaintiff applied for employment with Wal-Mart Stores, Inc. ("Walmart") on or about May 2016. (Doc. No. 1 ("Compl.") at ¶ 17.) In connection with this application, Walmart procured an employment background check report from defendant.

1

(*Id.* at ¶ 18.) In addition to seeking such a report, Walmart also delegated to defendant the responsibility of determining whether the individual meets Walmart's hiring standards. (*Id.* at ¶ 19.) Thus, if a report is determined by defendant to contain disqualifying information, defendant may adjudicate the applicant as "Non Competitive," and the applicant will be disqualified from employment. (*Id.* at ¶ 20.)

On June 7, 2016, defendant furnished a report to Walmart disclosing two San Luis Obispo County Superior Court cases with respect to plaintiff's application: one for "sexual intercourse with 16 yr old," and the other for "petty/grand theft with prior conviction." (*Id.* at ¶ 22.) However, those convictions belong to an individual named Robert Gregory Smith, Jr., a different person than plaintiff. (*Id.* at ¶ 23.) Plaintiff has never been charged, convicted, or otherwise associated with these two court cases. (*Id.*) Defendant's own report stated that plaintiff's middle name was "Glenn" rather than "Gregory," and reflected that plaintiff had never resided in San Luis Obispo County. (*Id.* at ¶¶ 25–26.) The two criminal cases appeared on plaintiff's background report despite these differences, resulting in plaintiff being adjudicated by defendant as "Non Competitive." (*Id.* at ¶¶ 41–42.) Plaintiff was therefore foreclosed from employment with Walmart. (*Id.* at ¶ 42.) On this basis, plaintiff alleges that defendant violated the Fair Credit Reporting Act ("FCRA"). (*Id.* at ¶ 56.)

Plaintiff initiated this action on April 17, 2017 by filing the complaint. On October 22, 2018, plaintiff provided notice to the court that he had accepted defendant's offer of judgment pursuant to Federal Rule of Civil Procedure 68. (Doc. No. 26.) That notice indicates that defendant agreed to pay plaintiff in the amount of $105,000.00 "as well as an additional amount for Plaintiff's costs and attorney's fees to be negotiated between the parties or by motion for attorney's fees." (*Id.* at 1–2.) Apparently unable to reach an agreement with respect to attorneys' fees and costs, plaintiff filed the instant motion on November 26, 2018. (Doc. No. 28.) In it, plaintiff seeks to recover $127,120.00 in attorneys' fees, calculated based upon attorneys having worked 317.8 billable hours at a rate of $400.00 per hour. (Doc. No. 28-1 at 4.) Plaintiff also seeks to recover costs in the amount of $31,658.50. (*Id.*) Defendants filed an opposition to the attorneys' fees motion on December 24, 2018, arguing that plaintiff's request should be sharply

reduced, and that plaintiff should recover no more than $58,891.16 in combined fees and costs. (Doc. No. 29 at 8.) Plaintiff filed a reply on January 3, 2019. (Doc. No. 30.)

**LEGAL STANDARD**

In adjudicating motions for attorneys' fees pursuant to Rule 68 offers of judgment, "courts should apply the usual rules of contract interpretation." *Holland v. Roeser*, 37 F.3d 501, 504 (9th Cir. 1994). That is, an award of attorneys' fees pursuant to an accepted Rule 68 offer is governed by the principles of contract law rather than the substantive law under which the parties have litigated the case. *See Miller v. City of Portland*, 868 F.3d 846, 851–52 (9th Cir. 2017) (reversing a denial of attorneys' fees in a case brought under 42 U.S.C. § 1983 and explaining that the lower court "decided the wrong question—whether Miller was *entitled* to fees under § 1988—rather than the *amount* of fees to which she was entitled under the Rule 68 Offer."); *Conner v. Placer County*, No. 2:17-cv-01830-GEB-KJN, 2018 WL 466261, at *2 (E.D. Cal. Jan. 18, 2018). "Plaintiffs are 'entitled to rely on the plain language of the offer they accepted,' and 'any ambiguities are construed against the drafter.'" *Miller*, 868 F.3d 846, 851 (quoting *Erdman v. Cochise County*, 926 F.2d 877, 880, 897 (9th Cir. 1991)). The issue of costs is treated identically when a Rule 68 offer is accepted. *See Marek v. Chesny*, 473 U.S. 1, 9 (1985) ("If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts that offer, the judgment will necessarily include costs[.]")

**ANALYSIS**

Here, defendant opposes plaintiff's motion on multiple grounds. A few of defendant's objections have merit. In the court's view, many do not. Each is addressed in turn below.

**A.  Reasonableness of Hourly Rate**

Plaintiff's counsel, Devin H. Fok, seeks attorneys' fees compensated at a rate of $400 per hour. (Doc. No. 28-1 at 8.) Defendant contends that this rate is above that typically awarded in similar cases in the Fresno Division of the Eastern District of California, and that attorney Fok should instead be compensated at a rate of $300 per hour. (Doc. No. 29 at 13–14.)

In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895

(1984); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)); *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Typically, the "relevant legal community" is the forum district[1] and that the local hourly rates for similar work should normally be employed. *Gonzalez*, 729 F.3d at 1205; *Prison Legal News*, 608 F.3d at 454; *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994); *Deukmejian*, 987 F.2d at 1405.

Because neither party has submitted declarations addressing the appropriate hourly rates for attorneys in the Eastern District of California, the court will look to recent decisions to determine whether the rates requested by plaintiff's counsel are supported. *See United*

---

[1] While the undersigned recognizes that judges in the Eastern District of California have sometimes distinguished between Fresno and Sacramento in determining appropriate hourly rates, that approach appears questionable. First, unlike true multiple division districts, by Local Rule the Eastern District is not divided into separate divisions but rather merely designates Sacramento and Fresno as the two locations where court is in continuous session within the district. *See* Local Rule 120(a). Second, the general rule for awarding attorneys' fee rates is that "the rates of attorneys practicing in the forum *district*" are used. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added). The ultimate task of the court is to discern the "prevailing market rates in the relevant community." *See Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). This court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases litigated in the Fresno courthouse. *See Mitchell v. Chavez*, No. 1:13-cv-01324-DAD-EPG, 2018 WL 3218364, at *5 (E.D. Cal. June 29, 2018). Again, the typical approach looks to the *district* in which the court sits. *See Gonzalez*, 729 F.3d at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the "Northern District of California" as the relevant legal community); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (same); *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). *But see Vega v. Eatherford U.S. LP*, No. 1:14-cv-01790-JLT, 2016 WL 7116731, at *16 (E.D. Cal. Dec. 7, 2016) (concluding that within the Eastern District of California the appropriate forum for determining the lodestar rate is the division of the District in which the case is filed) (quoting *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011)).

4

*Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."). There is limited precedent within the Eastern District of California with respect to the appropriate hourly rate charged specifically in FCRA cases. The court's research has revealed only one such case, in which attorneys with 14–20 years' experience agreed to an hourly rate of $325.00, and associates agreed to an hourly rate of $200.00. *See Santos v. Jaco Oil Co.*, No. 1:14-cv-00738-JLT, 2015 WL 5732829, at *16 (E.D. Cal. Sept. 29, 2015). However, in determining the appropriate hourly rate, this court is not confined solely to considering cases brought under the same statute. Indeed, the Ninth Circuit has suggested that it would constitute error to do so. *See Camacho*, 523 F.3d at 981 (remanding a case brought under the Fair Debt Collection Practices Act to the district court for a determination of the prevailing hourly rate and instructing the court that it "should not restrict its analysis to FDCPA cases"); *Prison Legal News*, 608 F.3d at 455 (stating that "the proper scope of comparison . . . extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter") (quoting *Blum*, 465 U.S. at 895 n.11). In addition, "a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho*, 523 F.3d at 981; *see also Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) ("We hold . . . that it was an abuse of discretion in this case to apply market rates in effect more than two years before the work was performed.") (emphasis omitted). The decision in *Santos* was issued in September of 2015, whereas this action was not commenced until April of 2017. (Doc. No. 1.) In addition, an examination of attorney Fok's billing records reveals that much of the work on this case occurred more than two years after *Santos* was decided. In light of the foregoing Ninth Circuit authority, the court finds that the hourly rate awarded in the *Santos* case provides only limited guidance with respect to what hourly rate should be awarded here.

Defendant's motion contends that an hourly rate of $400.00 is too high because this was "a simple FCRA case." (Doc. No. 29 at 13.) However, multiple district courts have recognized that the FCRA "is a complex and challenging area of law." *Holman v. Experian Info. Sols., Inc.*,

No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *4 (N.D. Cal. Dec. 12, 2014); *White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1172 (C.D. Cal. 2014) (same), *as amended* (May 1, 2014), *and aff'd sub nom. Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016). Here, attorney Fok's declaration states that he graduated from the University of California Los Angeles School of Law and has been a practicing attorney for more than 10 years. (Doc. No. 28-2 ("Fok Decl.") at ¶ 2.) His practice "relates exclusively to background check issues" similar to those presented in this case under both the FCRA and its California equivalent, the California Investigative Consumer Reporting Agencies Act. (*Id.* at ¶ 3.) Most if not all of attorney Fok's legal career appears to have been devoted to plaintiff-side consumer litigation, representing both individuals and class actions. (*Id.* at 5.) On the basis of attorney Fok's experience in complex consumer litigation such as this, the court finds that an hourly rate of $400.00 is appropriate for attorneys in the Eastern District of California. *See N.L. by Lemos v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2019 WL 1428122, at *5 (E.D. Cal. Mar. 29, 2019) (approving an hourly rate of $400 for an attorney with nine years' experience in a case involving the Telephone Consumer Protection Act and the Rosenthal Fair Debt Collection Practices Act); *Early v. Keystone Rest. Grp., LLC*, No. 2:16-cv-00740-JAM-DB, 2019 WL 918211, at *5 (E.D. Cal. Feb. 25, 2019) (stating that "the relevant market in this case is the rate prevailing in the Eastern District of California" and approving an hourly rate of $530.00 in an employment discrimination case for an attorney with over 30 years' experience).

**B.     The Reasonableness of Hours Expended**

   1.     Excessive Billing for Deposition Preparation

A review of attorney Fok's billing records indicates twenty-one separate billing entries for deposition preparation, totaling roughly 70 hours. (*See* Doc. No. 28-5.) Defendant seeks to reduce this amount to a total of 24 hours, arguing that the remainder of the time attributed to this task is excessive. (Doc. No. 29 at 15.)

As plaintiff acknowledges in his reply, the depositions themselves amounted to 13.2 billable hours. (Doc. No. 30 at 9.) Thus, attorney Fok seeks to recover more than five hours of deposition preparation for every hour of deposition that actually occurred. While the court

6

acknowledges the necessity of adequate deposition preparation, such a large amount of time attributed to deposition preparation is unreasonable. *See Wheeler v. Coss*, No. 3:06-CV-00717-RAM, 2010 WL 2628667, at *4–5 (D. Nev. June 28, 2010) (reducing fees for deposition preparation to a ratio of roughly two hours of preparation for every hour of deposition). Accordingly, the court will reduce the number of hours awarded by 40 hours.

### 2. Excessive Time to Draft and File a Boilerplate Complaint

Attorney Fok also seeks a total of 12.1 hours for drafting the complaint filed in this action. (*See* Doc. No. 28-5.) Defendant contends that the amount of time spent preparing the complaint was excessive, and seeks to reduce the amount to four hours. (Doc. No. 29 at 15.)

Defendant's primary contention is that the complaint is "boilerplate," and effectively identical to complaints attorney Fok has previously filed in similar actions. (*Id.*) The undersigned disagrees. Although some portions of the complaint, such as the causes of action, use language that also appears in previous complaints, most of the complaint does not. Much of it is given over to allegations specific to the plaintiff, which necessarily were drafted solely for this case. (*See* Compl. at ¶¶ 1–57.) The complaint is roughly twelve pages in length, meaning that attorney Fok spent approximately one hour for every page written. This is well within the range found to be reasonable by other courts. *See Schmidt v. City of Modesto*, No. 1:17-cv-01411-DAD-MJS, 2018 WL 6593362, at *7 (E.D. Cal. Dec. 14, 2018) (awarding fees for preparation of an opposition memorandum at the rate of two-thirds of a page per hour); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1215 (E.D. Cal. 2009) (noting that "for each hour of attorney time, plaintiff's counsel produced roughly two-thirds of a page of their opposition"); *Thao v. Comm'r of Soc. Sec.*, No. CIV S-06-2206-CMK, 2009 WL 737019, at *3 (E.D. Cal. Mar. 19, 2009) (finding that a rate of roughly one page per hour was reasonable when that time did not account for research or reviewing the opposing motion). The court finds the number of hours expended by attorney Fok in drafting the complaint to be reasonable.

### 3. Excessive Time for Unidentified Client Communications

Next, defendant seeks to have all billing for unidentified "client communications" stricken entirely, or alternatively to have it reduced dramatically. Billing records submitted by attorney

7

Fok show over a hundred entries for unidentified client communications, generally in the form of phone calls or text messages. (Doc. No. 25-8.) These communications total roughly 25 hours. (Doc. No. 29-8.)

The burden for establishing entitlement to a fee award rests with the fee applicant. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Frequently, this will necessitate the submission of evidence to the court in order to determine whether the fees are reasonable. *See Jadwin*, 767 F. Supp. 2d at 1100. Although plaintiff did not submit such evidence with his original motion, attorney Fok filed a supplemental declaration attached to the reply brief discussing these contacts with the client. (Doc. No. 30-1 ("Fok Suppl. Decl.") at ¶¶ 2–27.) In addition, at oral argument, attorney Fok explained that his client is generally unfamiliar with the practice of law, necessitating frequent communications to explain the course of litigation. Nonetheless, the court concludes that the amount of time attributed to client communications in this case is somewhat excessive under the circumstances. Moreover, attorney Fok's supplemental declaration indicates that some of these communications with his client bore little relation (if any) to this litigation. For instance, that declaration states that the communications between attorney Fok and his client that occurred in May 2018 concerned plaintiff's wish to relocate to a different state. (Fok Suppl. Decl. at ¶ 21.) These communications amounted to 2.7 hours of attorneys' fees in that month alone, with no explanation as to how those discussions related to this litigation. Given attorney Fok's failure to establish the appropriateness of certain attorney expended, and given that the amount attributed to client communications generally appears to be excessive, the court will exercise its discretion and reduce the total award in this area by 12 hours.

    4. <u>Excessive General Knowledge Research</u>

Defendant next takes issue with roughly 22 hours of attorney time reportedly spent on research. Defendant contends that this amount of research was excessive, particularly in light of attorney Fok's level of experience in handling FCRA claims. (Doc. No. 29 at 16–17.)

Defendant's argument is premised on the notion that the research topics undertaken by attorney Fok are "ubiquitous in any FCRA practitioner's work" and are therefore "tasks that clients expect clerks and junior associates to perform." (Doc. No. 29 at 16.) In other words,

1 defendant would contend, attorney Fok should not be entitled to charge his full hourly rate to
2 perform such basic tasks.  However, defendant cites no authority for the proposition that certain
3 legal tasks should only be performed by less experienced attorneys in order to be fully
4 compensable.  While this work arrangement may be common among certain larger law firms, it is
5 by no means the only acceptable method of conducting legal work.  It is not the duty of this court
6 to impose a particular work arrangement on attorneys.  *See United States v. City & Cty. of San*
7 *Francisco*, 748 F. Supp. 1416, 1432 (N.D. Cal. 1990) (rejecting defendant's contention that
8 "court-awarded compensation should promote the use of the commercial law firm-type pyramidal
9 staffing pattern" and stating that "in this circuit there is ample authority for awarding a single fee
10 for all work done"), *aff'd in part, remanded in part sub nom. Davis v. City & Cty. of San*
11 *Francisco*, 976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d
12 345 (9th Cir. 1993).  The court finds that 22 hours of attorney time spent conducting legal
13 research over the course of this litigation is reasonable, and declines defendant's request to strike
14 or reduce the hourly compensation in this area.

        5.        <u>Excessive Travel Time</u>

Next, defendant seeks a reduction in the amount awarded to attorney Fok for travel time.
Defendant claims that the hours spent traveling were excessive, and that in any event attorney
Fok should not be compensated for travel time during which no legal work was performed.  (Doc.
No. 29 at 17–18.)

Defendant's second argument—that, in defendant's words, "it is simply not reasonable to
seek reimbursement at $400 per hour to do nothing but sit on a plane"—is easily dispensed with.
"The Ninth Circuit has established that travel time . . . [is] reasonably compensated at normal
hourly rates if such is the custom in the relevant legal market."  *Hall v. City of Fairfield*, No.
2:10-cv-00508-DAD, 2014 WL 1286001, at *13 (E.D. Cal. Mar. 31, 2014) (quoting *Blackwell v.*
*Foley*, 724 F. Supp. 2d 1068, 1080 (N.D. Cal. 2010)).  The undersigned has previously
recognized that travel time is ordinarily compensable in the Eastern District of California at an
attorney's normal hourly rate, *see Jones v. County of Sacramento*, No. CIV S-09-1025 DAD,
2011 WL 3584332, at *15 (E.D. Cal. Aug. 12, 2011), and defendant has provided no authority

calling that conclusion into question. *See Jones v. McGill*, No. 1:08-cv-00396–LJO–DLB, 2009 WL 1862457 at *3 (E.D. Cal. June 29, 2009) (awarding 15 hours of attorney travel time for meetings with experts and witnesses as "reasonable"); *Davis v. Sundance Apartments*, No. CIV. S–07–1922 FCD GGH, 2008 WL 3166479 at *5 (E.D. Cal. Aug. 5, 2008) (awarding 6 hours of attorney travel time because it "was essential to the case, and thus, reasonable"); *Estate of Kligge v. Fidelity Mortg. of Cal.*, No. CIV F 05–1519 AWI DLB, 2008 WL 171031 at *3 (E.D. Cal. Jan. 18, 2008) (awarding 15.8 hours of attorney travel time); *Chapman v. Pier 1 Imports, Inc.*, No. CIV. S–04–1339 LKK/DAD, 2007 WL 2462084 at *4 (E.D. Cal. Aug. 24, 2007) (awarding 18 hours of attorneys' fees attributable to travel time from counsel's office in Chico to Sacramento); *Cohen v. Williams*, No. CIV. S–06–605 FCD DAD, 2007 WL 174329, at *4 (E.D. Cal. Jan. 22, 2007) (awarding 1.5 hours of travel time from attorney's office to inspection site). The court will award attorney' fees at attorney Fok's regular rate for all reasonably incurred travel.

       The next question is whether the hours expended on travel were reasonable. Defendant takes issue with these hours in several respects. First, defendant argues that attorney Fok cannot recover for the 19.6 hours spent transporting his client. (Doc. No. 29 at 17.) Plaintiff's counsel contends in reply that plaintiff himself was "living on very modest means and did not own a car." (Doc. No. 30 at 5.) In other words, plaintiff and his attorney carpooling was likely the most cost-effective means of transporting plaintiff, since a driving service would have been far more expensive. The court acknowledges this difficulty but is aware of no authority supporting the proposition that time spent by an attorney transporting a client is compensable in an award of attorneys' fees. Although time spent by an attorney in travel necessary to the representation is recoverable at an attorney's normal hourly rate as discussed above, the court declines to award attorneys' fees for attorney time expended purely to transport plaintiff.

       Because attorney Fok's billing records are not precise, it is difficult to determine which travel time is specifically for attorney Fok himself and which is for transporting plaintiff. A billing entry on December 14, 2017 indicates that attorney Fok expended 0.9 hours driving to plaintiff's house to pick him up. (Doc. No. 28-5 at 3.) In addition, billing entries on December 15, 2017, March 11, 2018, and March 12, 2018 indicate that attorney Fok transported plaintiff on

those days as well.  Applying the travel time of 0.9 hours to these four billing entries, the court will therefore deduct an additional 3.6 hours from the fee award.

Next, defendant contends that attorney Fok "grossly exaggerated" travel time by billing for four hours traveling from Visalia to Fresno.  (Doc. No. 29 at 17.)  A review of the billing records does not bear this out.  Those records indicate that, as plaintiff states in reply, this travel was not solely from Visalia to Fresno, but was instead from the Los Angeles area to Fresno.  (Doc. No. 28-5 at 3; Doc. No. 30 at 5.)  A four-hour drive from Los Angeles to Fresno is quite reasonable, and the court declines to make any deduction in this area.

Defendant next argues that attorney Fok exaggerated the amount of time he spent traveling to and from South Carolina for depositions, since he billed a total of 12 hours flying from Los Angeles to Columbia, South Carolina.  However, those records indicate that this travel time—which normally takes roughly seven hours—was substantially delayed by attorney Fok's airline.  (Doc. No. 28-5 at 6.)  This resulted in the additional time billed.  The court finds this explanation satisfactory, and will base its award on the full amount of time ascribed to this travel.

In sum, the court will deduct a further 3.6 hours from attorney Fok's fee award with respect to attorney time attributed to transporting attorney Fok's client in this action.

6. Fees for September 5, 2018 Mediation

Next, defendant argues that the court should deduct all attorney hours billed for the mediation session held on September 5, 2018.  Defendant argues that plaintiff's settlement demand at this mediation session was so unreasonably high as to constitute a "complete waste of time," and that defendant "should not have to underwrite Plaintiff's poor behavior."  (Doc. No. 29 at 18.)

Defendant has provided no legal authority that would support a reduction of attorneys' fees under these circumstances.  Defendant was evidently unhappy with plaintiff's settlement demand and declined to meet it, as it was free to do.  However, the fact that plaintiff's demand was unsatisfactory to defendant does not, without more, render the attorney time spent in connection with  the mediation session non-compensable.  The court declines to deduct hours spent on the September 5, 2018 mediation.

11

### 7. Fees for Clerical Work

Finally, defendant states that several of attorney Fok's billing entries were for clerical work and are not compensable at attorney fee rates. Defendant identifies 36 billing entries totaling 6.7 hours that it contends were attributed to tasks that are clerical in nature. (Doc. No. 29-8 at 4–5.)

In the reply plaintiff addresses several of these entries and provides explanations demonstrating that these entries were not for clerical tasks. (Doc. No. 30 at 15.) Specifically, the reply provides explanations for entries on May 8, 2017, August 23, 28, and 29, 2017, and March 11 and 12, 2018. (*Id.*) The court finds those explanations to be reasonable. In addition, plaintiff's attorney stated at the hearing that the billing entries on September 3 and 4, 2018 were related to calling a mediator's office in relation to ongoing settlement discussions and also were not clerical in nature. However, plaintiff's counsel also conceded at the hearing that any other work was correctly identified by defendant as clerical and should not be compensated as attorneys' fees. Accordingly, the court will reduce the compensable hours in this area by 2.6 hours.

After accounting for these deductions, the court finds that a total of 259.6 hours is compensable as attorneys' fees. At a rate of $400 per hour, this equates to a fee award of $103,840.00.

### C. The Reasonableness of Costs Expended

Next, the court addresses defendant's argument that plaintiff's costs are excessive. (Doc. No. 29 at 19.)

#### 1. Travel Costs

Defendant first argues that travel costs are not compensable as a matter of law. (*Id.*) Defendant is correct, as far as it goes, that 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority." W. *Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86 (1991); *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010). Here, however, such statutory authority exists. As the Ninth Circuit in *Grove* recognized, the FCRA provides courts with the discretion to award non-taxable costs to

prevailing parties. *Grove*, 606 F.3d at 580. Moreover, as noted above, the award of attorneys' fees and costs in this case is governed by the terms of the Rule 68 offer rather than the substantive law of the case. *See Miller*, 868 F.3d at 851–52. The terms of that offer indicate that the judgment shall "include an additional amount for Plaintiff's reasonable costs and attorney's fees accrued through date of service" of the offer. (Doc. No. 26-1 at 2.) Thus, under both the relevant statute and the terms of the Rule 68 offer, the court finds that travel costs are compensable here.

In an exhibit attached to his reply brief, plaintiff has provided the court with a copy of his itinerary for his roundtrip flight from Los Angeles to Columbia, South Carolina. (Doc. No. 30-1 at 6–11.) The court is satisfied that the expense of this flight was reasonably incurred because of this action.

Nonetheless, the court finds that costs must be reduced somewhat to account for attorney Fok's travel to his client's house. As with the issue of attorneys' fees, the court is unpersuaded that an attorney's travel time to transport a client is recoverable as a cost of suit. Plaintiff's submissions indicate that mileage for the commute to the client's house, when compensated at a rate of $0.54 per mile, amounts to $16.59. (Doc. No. 28-4 at 1.) Because, as noted above, attorney Fok apparently made four such trips, the court will reduce the amount of costs awarded by $66.36.

        2.       <u>Plaintiff's Costs Incurred Immediately Before the Offer of Judgment Was Served</u>

Next, defendant moves for a reduction of $11,459.64 in costs incurred only days prior to defendant's service of the Rule 68 offer. (Doc. No. 29 at 20–21.) Without saying so directly, defendant insinuates that plaintiff is misleading the court and that these costs were not actually incurred by plaintiff's attorney prior to service of that offer.

As defendant points out, plaintiff seeks to recover $10,925.00 in expert fees paid two days prior to service of the Rule 68 offer, as well as $534.64 in airfare and hotel accommodations paid the day before service of the offer. (Doc. No. 29 at 21.) Defendant is correct that, per the terms of the Rule 68 offer, plaintiff is only entitled to recover costs "accrued through date of service" of the Rule 68 offer. (Doc. No. 26-1 at 2.) Defendant suggests, apparently without any evidence, that "[p]laintiff is simply backdating [those costs] to get reimbursed for them." (Doc. No. 29 at

13

21.) The allegation that opposing counsel has misled the court is a serious one, but the undersigned finds no evidence of such misrepresentations. Rather, with his reply brief plaintiff has submitted invoices demonstrating that both the expert fees and the hotel were indeed costs incurred prior to defendant's service of the Rule 68 offer. (Doc. No. 30-6 at 2–4; Doc. No. 30-7 at 2–3.) The court finds absolutely no basis upon which to deduct these amounts from the award of costs in this action.

        3.        <u>Plaintiff's Costs Associated with the September 5, 2018 Mediation</u>

Finally, defendant repeats the argument that because the settlement demand made by plaintiff at the September 5, 2018 mediation was effectively frivolous, plaintiff should not be permitted to recover costs incurred in connection with that mediation. (Doc. No. 29 at 21.) The court rejects this argument for the reasons already discussed.

Thus, the court will reduce the amount of costs awarded by $66.36 for the reason indicated above, for a total cost award of $31,592.14.

**D.**     **Lodestar Adjustment**

Finally, the court addresses defendant's argument that the court should impose a 15% deduction in plaintiff's lodestar amount. (Doc. No. 29 at 21–24.)

The lodestar figure arrived at above is presumptively reasonable. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2010), *abrogated on other grounds by Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013); *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009). Any adjustments to the lodestar amount must be carefully tailored, based only on the limited factors relevant to the reasonableness determination, and only to the extent a factor has not been subsumed within the lodestar calculation itself. *Rouse*, 603 F.3d at 705; *Camacho*, 523 F.3d at 982 (citing the factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The so-called "*Kerr* factors" to be considered include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due

14

> to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.

Here, defendant argues that attorney Fok's lodestar amount should be reduced because of the amount of time and labor required in this case, the novelty and difficulty of the case, the skilled required to perform the legal service properly, the preclusion of other employment, the customary fee, whether the fee was fixed or contingent, the amount involved, and the results obtained. The court addresses each in turn.

### 1. Time and Labor Required

Once again, defendant argues that the fee award should be reduced because "[t]his was a relatively simple matter." (Doc. No. 29 at 22.) The court has already expressed its disagreement with the view that this case was simple, and furthermore has already reduced the fee award based on defendant's previous objections that certain hours billed by plaintiff's counsel were somewhat excessive under the circumstances. The court finds that the lodestar amount arrived at accurately reflects the time and labor required to litigate this action.

### 2. The Novelty and Difficulty of the Questions Involved and the Skill Requisite to Perform the Legal Service Properly

Because defendant has opted to address these factors in tandem, the court will do so as well. Defendant argues that there was nothing novel about this case because in 2017 alone, more than 10,000 FCRA cases were filed. Moreover, defendant repeats the argument that this case "wasn't complicated" because "[p]laintiff allegedly lost an entry level, part time position with Walmart as a result of GIS's inclusion of criminal information about him." The court fails to see the connection between these two contentions. The court takes plaintiff's allegations—that he was denied employment because defendant incorrectly determined that he had a criminal record—to be a serious matter. Indeed, it is precisely because such claims may not yield a large

/////

monetary recovery that attorneys may be less willing to prosecute them in the first place. This court is certainly not inclined to reduce an attorney's lodestar recovery on that basis.

### 3. The Preclusion of Other Employment by the Attorney Due to Acceptance of This Case and Time Limitations Imposed by the Client or the Circumstances

Defendant argues these factors only in passing, stating that, at most, this case would have taken up less than 10% of attorney Fok's working hours over the course of this litigation, because of which it did not preclude him from taking other cases. The court agrees that attorney Fok was not required to devote his entire practice to this case, because of which an increase in the lodestar is likely unwarranted based on consideration of this factor. However, defendant has failed to demonstrate that consideration of this factor would support a decrease in the lodestar.

### 4. The Customary Fee and Whether the Fee is Fixed or Contingent

Defendant correctly notes that plaintiff's counsel took this case on a contingency basis. (Doc. No. 29 at 23.) However, defendant offers no explanation as to how this factor would support a reduction in the lodestar, as defendant has requested. Here, again, the court finds no basis to reduce the lodestar.

### 5. The Amount Involved and the Results Obtained

Finally, defendant argues that the results obtained in this case were not extraordinary. (*Id.* at 23–24.) In particular, defendant points out that plaintiff was previously served with a Rule 68 offer in the amount of $66,000.00 in December of 2017, which plaintiff rejected. (*Id.*) Plaintiff's counsel then incurred more than $130,000.00 in fees and costs, only to subsequently accept a second Rule 68 offer, totaling $105,000.00. (*Id.*) Defendant argues that a lodestar reduction is appropriate because plaintiff could have accepted the first settlement offer rather than incurring the additional expenses of litigating the case. (*Id.*)

Defendant's argument, unsupported by citation to authority, is unpersuasive in any event. By turning down defendant's first Rule 68 offer, plaintiff ultimately increased his recovery by more than a third. Particularly because this case involves only a single plaintiff, the additional award of almost $40,000.00 is substantial. The court will not penalize plaintiff's counsel for working diligently to maximize his client's recovery.

16

The court therefore declines defendant's request for a 15% reduction in plaintiff's lodestar.

## CONCLUSION

For the reasons set forth above,

1. Plaintiff's motion for attorneys' fees (Doc. No. 28) is granted in part;
2. The court awards reasonable attorneys' fees to plaintiff in the amount of $103,840.00; and
3. The court also awards reasonable costs to plaintiff in the amount of $31,592.14 for total award of fees and costs in the amount of $135,432.14.

IT IS SO ORDERED.

Dated: **May 14, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE